# Illinois Official Reports

## Appellate Court

---

### *Dore v. Quezada*, 2017 IL App (1st) 162142

---

| | |
|---|---|
| Appellate Court Caption | JOHN N. DORE d/b/a John N. Dore and Associates, Plaintiff-Appellant, v. CARLOS QUEZADA, JR., and TAPAS QUEZADA, INC., Defendants (Baongoc Aggen and Broadview Cooperative Apartments, Inc., Third-Party Respondents-Appellees). |
| District & No. | First District, First Division<br>Docket No. 1-16-2142 |
| Filed<br>Rehearing denied | May 8, 2017<br>June 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-M1-147913; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Dore Law Offices LLC, of Chicago (James Dore and John N. Dore, of counsel), for appellant.<br><br>LAF (Kari Beyer, of counsel), and Jenner & Block LLP (Christopher C. Dickinson and Laura L. Norris, of counsel), both of Chicago, for appellee Baongoc Aggen. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Simon and Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff-appellant, John N. Dore d/b/a John N. Dore and Associates, obtained a judgment in Cook County circuit court against Carlos Quezada, Jr., (Quezada) and Tapas Quezada, Inc. (Tapas Quezada) (collectively, defendants) on May 11, 2015. Plaintiff initiated supplemental proceedings pursuant to section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2014)) with the filing of third-party citations against Baongoc Aggen and Broadview Cooperative Apartments, Inc. (Broadview) (collectively, respondents). Plaintiff served a citation upon Quezada by substitute service on September 28, 2015 by leaving a copy with Aggen at 918 W. Roosevelt Rd., #2-W, Broadview, Illinois (the Broadview apartment). Pursuant to the citation proceeding against Broadview and Aggen, plaintiff identified Aggen's ownership of the Broadview apartment, arguing that it was also owned by Quezada and therefore subject to turnover. After conducting an evidentiary hearing, the trial court found the Broadview apartment was exclusively Aggen's property. Accordingly, the trial court denied the motions for judgments against respondents and terminated the proceedings. The trial court quashed Quezada's citation served via substitute service. This timely appeal followed.

¶ 2    Plaintiff raises several issues for our review on appeal: (1) the trial court committed reversible error when it held that the evidence established Quezada held Aggen's property in a resulting trust, (2) the trial court erred by relying on Quezada's affidavit, (3) the court should have required a pleading seeking a declaration of a resulting trust, (4) the trial court erred in failing to impose sanctions on Aggen, (5) the trial court erred in declaring Aggen could assert a homestead exemption, and (6) the trial court erred in quashing the citation to discover assets served upon Quezada via substitute service.

¶ 3                                    JURISDICTION

¶ 4    On July 6, 2016, the trial court entered an order dismissing the citation to discover assets served on respondents. On August 1, 2016, plaintiff filed its notice of appeal. Accordingly, this court has jurisdiction over this matter pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 301 and 304(b)(4). Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 304(b)(4) (eff. Mar. 8, 2016).

¶ 5                                   BACKGROUND

¶ 6    On November 3, 2014, plaintiff filed a breach of contract action against defendants for failure to remit payment associated with legal services. Defendants were served via alternative service, and an *ex parte* judgment in the amount of $8581.88 plus costs was entered against them.

¶ 7    On August 25, 2015, plaintiff served Aggen with a citation to discover assets in an attempt to satisfy the judgment. On August 27, 2015, plaintiff served Broadview with a citation to discover assets and notice to enforce judgment. On September 28, 2015, plaintiff attempted to serve Quezada through substitute service on Aggen at the Broadview apartment.

¶ 8    On September 16, 2015, Aggen appeared on the citation's return date. The proceeding was continued so Aggen could produce responsive documents. In discovery, plaintiff obtained a copy of shares of stock issued by Broadview naming Aggen and Quezada as joint tenants with rights of survivorship. The stock was issued on August 26, 2014. Discovery also showed that

Broadview reissued the shares on September 19, 2015, removing Quezada and placing Aggen's parents' name on them.

¶ 9      On September 24, 2015, Broadview filed an answer to the citation, stating that it held none of Quezada's property on the date of service. On November 20, 2015, Aggen filed an answer in which she stated that she held none of Quezada's property on the date of service. On December 21, 2015, Aggen provided a response to the citation and claim of ownership of the Broadview apartment. She provided an amended response with additional material on January 11, 2016. In her amended response, Aggen argued she was the sole owner of the apartment shares because Quezada held the shares in a resulting trust for her benefit. She supported this based on the fact that Quezada contributed no funds to the apartment purchase and she was the sole signatory on all the transaction documentation. Aggen provided her affidavit along with various documents from the purchase of the apartment. She attached the shares first issued in August 2014 and then reissued in September 2015. She also attached the affidavits of Quezada, Sandra Cruz (a realtor), and her father, Nghi Truong.

¶ 10      Plaintiff filed a reply and objections to Aggen's amended response. In his reply, plaintiff argued that the service of the citation upon Aggen created a lien on the shares she held jointly with Quezada. He asserted that Quezada's removal from the shares with the assistance of Broadview constituted a violation of the prohibition contained in the citation. He further asserted that Aggen had to file a declaratory judgment action in order for the court to declare that there was a resulting trust. Plaintiff also took issue with Aggen's homestead exemption claim and the lack of documentation concerning the source of funds for the apartment purchase. On March 2, 2016, the trial court ordered an evidentiary hearing and issued a rule to show cause against Quezada based on his failure to appear.

¶ 11      During discovery, plaintiff also discovered that Aggen had negotiated a $1000 check payable to herself and Quezada after she had been served with the citation. As a result of this discovery, on April 8, 2016, plaintiff moved for the entry of judgment against Aggen and for sanctions. The court continued the motion to the evidentiary hearing date.

¶ 12      The evidentiary hearing was held on May 11, May 20, and June 2, 2016. At the hearing, Aggen testified regarding her relationship with Quezada and how she came to purchase the Broadview apartment. She testified as to the source of the funds and how Quezada came to be listed on the stock. She also testified as to the $1000 check that had been issued to her and Quezada. She testified that the money to purchase both apartments came from her parents in Vietnam. The money was transferred from Vietnam via an informal process that involved Vietnamese friends loaning her money here and her father paying the families back in Vietnam. Her father testified and explained that the funds came from the sale of his house in Vietnam. He also testified to the informal money transfers and explained there was no other way to transfer funds from Vietnam to the United States and that all of his records concerning the sale and his Vietnam bank accounts were still in Vietnam.

¶ 13      Shawn Bolger, an attorney for the seller of an apartment at 2212 S. 12th Avenue in Broadview, Illinois, was called to testify regarding the $1000 check. Bolger testified that in August 2015, he received a $1000 earnest money check bearing the name of Aggen and Quezada. When the transaction did not close, he reissued the check the same way it had been received, under the name of Aggen and Quezada. He identified the real estate contract related to the earnest money, which only listed Aggen as purchaser. Additionally, only Aggen executed the authorization to release earnest money.

¶ 14     Broadview's secretary, Richard Schram, testified that he attended the Broadview apartment closing. Only Aggen applied to join the cooperative. At the closing he discussed with Aggen about placing someone else on the shares. He described to Aggen what a beneficiary was but did not inform her that Quezada would appear on the stock certificates. He stated that he provided copies of the stock a few days after the closing. He also testified that at some point Quezada approached him about removing his name from the shares. Quezada wanted Aggen's parents listed in his place. Schram prepared the new shares, and Aggen signed off on the transfer. It was Schram's suggestion to put Quezada on the shares as a joint tenant with a right of survivorship.

¶ 15     Lastly, Sandra Cruz testified that she acted as a real estate broker for Aggen in connection with the Broadview apartment transaction. Aggen made the offer to buy the apartment and provided the earnest money. "The attorney" suggested Aggen name a beneficiary, and she explained what a beneficiary was to Aggen. None of the closing documents contained language about Quezada becoming a joint tenant, and the closing could have taken place without Quezada present. She did not speak to Aggen's parents about the purchase and did not know their names but believed the apartment was for Aggen and her parents.

¶ 16     On June 6, 2016, plaintiff moved to reopen proofs to admit a certified deed from 3221 N. California #1G, Chicago as evidence, which showed Aggen as the property owner. The trial court granted the motion, and the deed was admitted.

¶ 17     On July 6, 2016, the trial court denied plaintiff's motions for judgment against respondents, terminated and dismissed the citations served upon them, quashed the citation served on Quezada via alternative service, and denied all sanctions plaintiff sought to impose on Aggen.

¶ 18     This timely appeal followed.

¶ 19                                 ANALYSIS

¶ 20     Plaintiff argues that the trial court erred when it found Quezada held the Broadview apartment in a resulting trust for the benefit of Aggen. Plaintiff takes issue with several of the trial court's actions. He contends the trial court erred in relying on Quezada's affidavit, the evidence in support of the resulting trust was inherently unbelievable, and the intent of Aggen and Quezada was for both to have an interest in the property.

¶ 21     Where the trial court heard testimony and made credibility findings, we review the trial court's decision under a manifest weight of the evidence standard. *Bazydlo v. Volant*, 164 Ill. 2d 207, 214-15 (1995). A trial court's finding is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 106 (1995).

¶ 22     A resulting trust is created by operation of law and has its roots in the presumed intention of the parties. *In re Estate of Wilson*, 81 Ill. 2d 349, 355 (1980). A resulting trust generally arises where one person purchases property with his own funds and allows title to be taken in the name of another. *Id.* The burden of proof is upon the party seeking to establish a resulting trust, and the evidence must be clear, convincing and unmistakable. *Id.* at 356. In order to establish a resulting trust, however, the intent of the parties must be alleged and established

because a court cannot impose a trust where the intent of the parties is unclear. *In re Estate of Wilkening*, 109 Ill. App. 3d 934, 943 (1982).

¶ 23 We disagree with plaintiff and conclude that the trial court's finding that the Broadview apartment was held in a resulting trust for the benefit of Aggen was not against the manifest weight of the evidence. Initially, plaintiff argues that the stock certificate showing Quezada as a joint tenant with a right of survivorship demonstrates Aggen's intent to provide a gift. While it is true a gift may exist where the grantor takes title to the property in the name of herself and another person jointly, "if the purchase price was paid by only one of such grantees, this indicates an intent that the grantee is the only one beneficially interested in the property." *Gary-Wheaton Bank v. Meyer*, 130 Ill. App. 3d 87, 91-92 (1984). In such a situation, "the expressed intent as shown by the deed must give way to the rule of equity which protects the party paying the purchase price by raising a resulting trust in [her] favor." *Id.* (citing *Prassa v. Corcoran*, 24 Ill. 2d 288, 292 (1962)). Even accepting plaintiff's argument that the stock shows an intent to provide a gift, plaintiff cannot overcome the fact that Aggen provided the funds for the entire transaction. The evidence before the trial court showed Aggen, not Quezada, provided the entire purchase price of the Broadview apartment. Moreover, Aggen is the sole party to the proprietary lease, the sale agreement, the bill of sale, and the closing statement. The record also shows that Aggen's parents emigrated to the United States on October 1, 2015. The impending arrival of her parents supports the explanation regarding the stock transfer only weeks before, on September 19, 2015. This documentary evidence showing Aggen as the sole purchaser is enough to support the trial court's finding of a resulting trust in Aggen's favor.

¶ 24 Outside of the documentary evidence, the testimonial evidence also supports the conclusion that a resulting trust was created for the benefit of Aggen. Aggen testified she allowed Quezada's name to be on the certificates at the urging of Schram in case something happened to her. Her testimony showed that she was battling a cancer diagnosis at the time and had no family in the United States. She was informed that if nobody was listed and she died, the apartment would revert back to the cooperative. She further testified that she did not know what joint tenants with right of survivorship meant. Aggen, along with Cruz, testified that the apartment was for herself and her parents once they arrived from Vietnam. Aggen's father also testified that he had provided the funds for the purchase through the sale of his home in Vietnam. Given the above evidence, we conclude that the trial court's finding was not unreasonable, arbitrary, or not based on the evidence. *Leonardi*, 168 Ill. 2d at 106.

¶ 25 In reaching this conclusion, we reject plaintiff's suggestion Aggen, Cruz, and Troung did not testify credibly. It is well established that when applying a manifest weight of the evidence standard, a reviewing court will not substitute its judgment for that of the trial court on such matters as witness credibility, the weight to be given evidence, and the inferences to be drawn from the evidence, even if the reviewing court would have reached a different conclusion if it had been the trier of fact. *In re A.W.*, 231 Ill. 2d 92, 102 (2008); *In re Lakita B.*, 297 Ill. App. 3d 985, 994 (1998). The credibility to be given to Aggen, Cruz, Troung, and other witnesses was for the trial court to determine. While plaintiff points out inconsistencies with various aspects of their testimony, it was the trial court's job to weigh them and make a credibility determination. The trial court found them to be credible witnesses, and nothing in the record demonstrates we should disregard these findings.

¶ 26    We also conclude that the trial court's reliance on Quezada's affidavit, if any, was harmless because the testimony in the affidavit was cumulative of the testimony of Aggen. *Pharr v. Chicago Transit Authority*, 220 Ill. App. 3d 509, 517 (1991).

¶ 27    We do not address plaintiff's argument that Aggen should have filed a counterclaim in order to raise a resulting trust issue because plaintiff has waived review of the issue. While plaintiff did make this assertion below, plaintiff did not properly raise it and failed to seek a ruling on it. In his reply below, he did not seek to have Aggen file a counterclaim or declaratory judgment action raising the trust issue. Similarly, at the evidentiary hearing, plaintiff discussed his belief about what Aggen should have filed but provided no case law and again failed to have the court rule on the matter. Based on this inaction, plaintiff has waived review of any alleged defect in Aggen's response. See *Dolce v. Dolce*, 108 Ill. App. 3d 817, 820 (1982) (waiving argument concerning "technical errors" where no motion to strike is presented to the trial court).

¶ 28    We conclude the trial court's finding that the Broadview apartment was held in a resulting trust for the benefit of Aggen was not against the manifest weight of the evidence. Accordingly, Quezada had no interest in the Broadview apartment that could be used to satisfy the judgment against him.[1]

¶ 29    Next, plaintiff argues that the trial court erred in failing to impose sanctions against Aggen. This argument relates to the negotiation of a $1000 check issued to Aggen and Quezada jointly. On April 8, 2016, plaintiff brought a motion for judgment and sanctions. Plaintiff argued that because Aggen had failed to disclose the $1000 check, both her answer to the citation and her affidavit of completeness, which stated she had none of Quezada's property, were false. Plaintiff sought sanctions under Rule 137(a), Rule 219(c), and based on the court's own inherent authority. Ill. S. Ct. R. 137(a) (eff. July 1, 2013); R. 219(c) (eff. July 1, 2002).

¶ 30    Before this court plaintiff argues for *de novo* review but fails to support why *de novo* review would be proper when Illinois case law holds that whether to sanction a party is committed to the sound discretion of the trial court. See *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998) (stating that the decision to impose sanctions under Rule 137 is committed to the sound discretion of the circuit court); *Kauk v. Matthews*, 100 Ill. App. 3d 107, 115 (1981) (sanctions under section 2-1402 or Illinois Supreme Court Rule 277(h) (eff. Nov. 1, 1978) are imposed at the discretion of the trial court); *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998) (imposing sanctions under Rule 219(c) is within the discretion of the trial court); *Cronin v. Kottke Associates, LLC*, 2012 IL App (1st) 111632, ¶ 42 (imposing sanctions based on the court's inherent power is reviewed under an abuse of discretion). Accordingly, we review the trial court's decision to not impose sanctions under an abuse of discretion standard.

¶ 31    In seeking sanctions, plaintiff relies on section 3-110(a) of the Uniform Commercial Code; however, such reliance is misplaced. Section 3-110(a) pertains to the identification of a person to whom an instrument is payable. 810 ILCS 5/3-110(a) (West 2014). Relying on this section, plaintiff argues Bolger's intent, as the issuer, determines to whom the $1000 check should be paid. However, simply because an instrument may be payable to Quezada does not necessarily lead to the conclusion he had an "interest" in the funds.

---

[1]Because we determine that Quezada had no interest in the subject property, we decline to address the trial court's ruling that Aggen would be entitled to a homestead exemption.

¶ 32    When a third party asserts rights to the property in question, the claimant's rights shall be determined in accordance with the garnishment statute. 735 ILCS 5/12-701 *et seq.* (West 2014); *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill. 2d 307, 314 (1989). In *Zucker v. United States Computer Corp.*, this court held that the judgment debtor's designation as remitter on a cashier's check did not give the debtor a garnishable legal interest in the funds represented by the checks. 85 Ill. App. 3d 759, 767 (1980). In so holding, we determined that the term " 'interest' " as "read in context of section 7 of the garnishment act *** refer[red] to a property right constituting less than full ownership in the property sought to be garnished." *Id.*

¶ 33    Guided by the above case law, we find no abuse of discretion on the part of the trial court for its decision to not sanction Aggen. We conclude, as did the trial court, Quezada had no ownership interest in the $1000. The evidence showed that the $1000 check was issued by Shawn Bolger in his role as escrow agent for a second apartment Aggen was looking to purchase. Aggen testified that she had Quezada's name placed on the check because she was unsure if she would be able to close on the apartment and wanted him to be able to pick up the check since she did not have a car. Aggen further testified that the funds for the $1000 check came from her father and were drawn solely from her bank account. The relevant documentation for the purchase shows that Aggen was listed as the sole buyer. The earnest money release form shows Aggen as the sole purchaser and also contains only her signature authorizing the release of funds. Quezada's name appears on none of the transaction documents. Further, Bolger testified that he only issued the refund check to Aggen and Quezada because their names had appeared on the original. Aggen testified that Quezada signed the check over to her and has made no further claim to its proceeds. Given these facts, we agree with the trial court that Quezada had no garnishable interest in the proceeds. *Id.* Because no violation of the citation occurred, the trial court did not abuse its discretion in deciding not to sanction Aggen.[2]

¶ 34    Finally, plaintiff argues that the trial court erred in *sue sponte* quashing Quezada's citation served via substitute service. Plaintiff served Quezada by leaving a copy of the citation with Aggen at the Broadview apartment. At the evidentiary hearing, Aggen testified that Quezada never lived at the apartment. The affidavit of the special process server averred that Quezada's name was not on the mailbox. Based on the testimony and evidence presented at the hearing, the trial court, *sua sponte*, concluded that Quezada did not reside there and therefore service was not effective.

¶ 35    This issue raises two questions: (1) was it proper for the trial court to *sua sponte* raise the issue of personal jurisdiction over Quezada, and (2) if the issue was properly raised, was the trial court correct in finding substitute service ineffective?

¶ 36    The first question presents a question of law, and we review this issue under a *de novo* standard. *Williams v. Board of Trustees of the Morton Grove Firefighters' Pension Fund*, 398 Ill. App. 3d 680, 687 (2010). If the trial court could raise the issue *sua sponte*, the more deferential manifest weight of the evidence standard applies to whether the summons should have been quashed because the trial court's ruling is based in part on the live testimony and

---

[2]The trial court's order only references sanctions related to the citation, and plaintiff never obtained a ruling on any other possible sanctionable conduct. Accordingly, plaintiff has waived any further review of the issue. See *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 946 (1993) (failing to obtain a ruling on an issue results in waiver of issue on appeal).

credibility of Aggen. *Royal Extrusions Ltd. v. Continental Window & Glass Corp.*, 349 Ill. App. 3d 642, 645 (2004).

¶ 37    Initially, plaintiff argues that the trial court should not have even discussed or ruled upon the propriety of Quezada's summons. This appears to be a matter of first impression in Illinois, as neither the parties' nor our research uncovered any cases where a trial court raised the issue of personal jurisdiction *sua sponte* concerning a nonappearing party. Citing *Greenlaw v. United States* in support of his argument, plaintiff relies on the general proposition that courts should not create an issue where it has not been raised by a party. 554 U.S. 237, 243-44 (2008). While defendant is not a party to this appeal, respondents argue the trial court did not err in quashing the summons and citation of Quezada. Respondents argue that a trial court, pursuant to Rule 277, has wide discretion in managing supplemental proceedings before it. Ill. S. Ct. R. 277 (eff. Jan. 4, 2013); *Kauk v. Matthews*, 100 Ill. App. 3d 107, 113 (1981) (noting a trial court is given wide discretion in supplemental proceedings to protect the rights and interests of all parties).

¶ 38    Rule 277 provides that a supplementary proceeding is commenced by service of a citation upon the party against whom it is brought. Ill. S. Ct. R. 277(b). The citation is required to be served and returned "in the manner provided by rule for service, otherwise than by publication, of a notice of additional relief upon a party in default." Ill. S. Ct. R. 277(c). Illinois Supreme Court Rule 105, which provides for service of a notice of additional relief upon a party in default, sets forth two means by which a citation may be served, namely (1) "any method provided by law for service of summons, either within or without this State" and (2) "prepaid certified or registered mail addressed to the party, return receipt requested, showing to whom delivered and the date and address of delivery." Ill. S. Ct. R. 105 (eff. Jan. 1, 1989).

¶ 39    While not directly on point, our research has found that in certain circumstances, a federal district court may raise the issue of personal jurisdiction *sua sponte*. Several circuits have held that when an entry of default is sought against a party who has otherwise failed to appear or plead, a district court may *sua sponte* review personal jurisdiction. *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213-14 (2d Cir. 2010) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)); *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001); *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). This is done not to assert a personal defense on behalf of a nonappearing party, but to ensure the court has the power to enter the impending judgment. *Sinoying*, 619 F.3d at 213-14.

¶ 40    We believe Illinois courts have a similar responsibility and conclude that the trial court acted appropriately when it *sua sponte* raised the issue of personal jurisdiction over Quezada. After disposing of the proceedings against the third-party respondents, the only matter left pending before the trial court was the citation served on Quezada. The citation had called for him to appear on October 19, 2015. Quezada failed to appear on that date, and on March 2, 2016, the trial court issued a rule to show cause as to why he should not be held in contempt. Accordingly, the next step would be for the trial court to hold Quezada in contempt. However, any such contempt order would be void if the trial court lacked personal jurisdiction over Quezada. See *County of Lake v. Spare Things*, 27 Ill. App. 3d 179, 184 (1975) (stating that personal jurisdiction is necessary for enforcement of a contempt order). Given this procedural posture and the fact this was a supplemental proceeding under Rule 277, we find no error in the trial court's *sua sponte* inquiry regarding its personal jurisdiction over Quezada.

¶ 41 Turning to the trial court's decision to quash the service on Quezada, we conclude the trial court did not abuse its discretion in quashing service. Section 2-203 of the Code of Civil Procedure governs service upon an individual and allows for substitute service:

> "(2) by leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the contents of the summons, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode ***." 735 ILCS 5/2-203(a)(2) (West 2014).

A return of abode service must show strict compliance with all of the requirements set forth in section 2-203, "since the same presumption of validity that attaches to a return reciting personal service does not apply to substitute[ ] service." *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 309 (1986).

¶ 42 In quashing the summons and citation, the trial court found, based on the testimony and other evidence presented by Aggen, that the Broadview apartment where plaintiff served Quezada via substitute service was not his usual place of abode as required by section 2-203(a)(2). The affidavit of the special process server stated that Quezada's summons was served on Aggen at the Broadview apartment. The affidavit further stated that Aggen told the special process server that Quezada did not live there and that his name was not on the mailbox for the unit. The record also showed plaintiff served Quezada in the original action at addresses in New Mexico and through his business e-mail. At the citation proceeding, Aggen testified that Quezada had never lived at the Broadview apartment. Given these facts, we agree with the trial court that the Broadview apartment where plaintiff attempted service was not Quezada's usual place of abode as required by section 2-203(a)(2). Accordingly, the order of the trial court quashing service was not against the manifest weight of the evidence.

¶ 43                                                    CONCLUSION
¶ 44 Based on the above, the order of the trial court is affirmed in all respects.

¶ 45 Affirmed.