NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 200002-U

NO. 4-20-0002

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* ESTATE OF JOHN RODERICK McLAUGHLIN, Deceased | ) ) ) | Appeal from the Circuit Court of Piatt County |
| (National Alliance, a Virginia Nonstock Corporation, Petitioner-Appellant, | ) ) ) | No. 17P17 |
| v. | ) | |
| Michael J. McLaughlin and Robert P. McLaughlin, Co-Administrators, | ) ) | Honorable Wm. Hugh Finson, |
| Respondents-Appellees). | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Steigmann and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court did not err by barring petitioner's claim against decedent's estate.

¶ 2     In October 2018, petitioner, National Alliance, a Virginia nonstock corporation, filed a claim for $850,000 against the estate of John Roderick McLaughlin, deceased. Respondents, Michael J. McLaughlin and Robert P. McLaughlin, the co-administrators of decedent's estate, filed a motion to bar petitioner's claim pursuant to section 18-12 of the Probate Act of 1975 (Act) (755 ILCS 5/18-12 (West 2016)). After a March 2019 hearing, the Piatt County circuit court granted the co-administrators' motion to bar petitioner's claim. Petitioner filed a motion to vacate the court's judgment barring petitioner's claim, which the court granted in August 2019. After a second hearing on the co-administrators' motion to bar petitioner's claim, the court again barred petitioner's claim. Petitioner filed a motion to reconsider, which

the court denied.

¶ 3        Petitioner appeals, asserting (1) the circuit court erred by finding Michael's testimony overcame an admission, (2) the court erred in applying the "reasonably ascertainable" requirement of section 18-12(a)(3) of the Act (755 ILCS 5/18-12(a)(3) (West 2016)), and (3) the court's finding respondents could not have reasonably ascertained petitioner's claim was against the manifest weight of the evidence. We affirm.

¶ 4                                I. BACKGROUND

¶ 5        Decedent died on February 22, 2017. At the time of his death, decedent was a farmer and lived in Monticello, Illinois. The co-administrators of decedent's estate are decedent's brothers. Michael lived in Cerro Gordo, Illinois, and assisted decedent with his farming. Robert lived in Seattle, Washington.

¶ 6        Before his death, decedent was represented by Douglas Bywater in Hanover County, Virginia, circuit court case No. CL-16002090-00, in which decedent filed a suit against petitioner. In a July 2019 written evidence deposition, Bywater stated he filed a motion to withdraw as decedent's attorney in the Virginia case, and the court granted his motion by a written order entered on March 3, 2017. Bywater mailed a copy of the March 3, 2017, order to decedent's home address in Monticello, Illinois. Bywater did not have a record showing he mailed the written order. The March 3, 2017, order noted a counterclaim had been filed against decedent by serving decedent's counsel. In the March 3, 2017, order, the court also granted decedent 21 days to (1) file responsive pleadings to the counterclaim and (2) respond to the discovery propounded to him.

¶ 7        In April 2017, the co-administrators filed a petition for letters of administration, which the circuit court granted. The court also entered an order declaring the co-administrators

were decedent's only heirs. The co-administrators published a death and claim notice in the Piatt County Journal Republican on (1) April 26, 2017; (2) May 3, 2017; and (3) May 10, 2017. The notices listed the deadline for filing a claim against the estate as November 1, 2017.

¶ 8 On October 25, 2018, petitioner filed a statement of claim against decedent's estate. The claim sought $850,000 and asserted it arose from decedent's tortious breach of his fiduciary duties owed to petitioner when decedent served as a director on petitioner's board of directors. The claim referenced Hanover County, Virginia case No. CL-16002090-01. In January 2019, the co-administrators filed a motion to bar petitioner's claim under section 18-12 of the Act (755 ILCS 5/18-12 (West 2016)), asserting petitioner's claim was untimely and not known or reasonably ascertainable by the co-administrators.

¶ 9 On March 20, 2019, the circuit court held a hearing on the co-administrators' motion to bar petitioner's claim. Petitioner did not appear at the hearing but had filed a motion to continue. The court denied the motion to continue and heard argument from the co-administrators' counsel. The court barred petitioner's claim on the basis it was not timely filed. The court filed its written order on March 22, 2019. Petitioner subsequently filed a motion to vacate the March 22, 2019, order, asserting petitioner's claim was known or reasonably ascertainable by the co-administrators.

¶ 10 At an August 7, 2019, hearing, the circuit court granted petitioner's oral motion to admit Bywater's evidence deposition. The court also reserved ruling on petitioner's oral motion to show an admission of facts and allowed the co-administrators to file Michael's response to petitioner's request for admission of facts within three days. On August 30, 2019, the court first held a hearing on petitioner's motion to show an admission of facts. The court recognized the co-administrators filed Michael's response to the request within the three days given at the last

hearing but still found Michael's response untimely. Thus, the court granted petitioner's motion and deemed the facts admitted. It specified the admission as follows: "In that, Mr. McLaughlin, Michael, acknowledges receiving mail from Mr. Bywater, the lawyer in Virginia who was representing the decedent." At the hearing, the court also addressed petitioner's motion to vacate. In addition to Bywater's deposition and the deemed admitted fact, petitioner presented the following two documents from the Virginia case: (1) the March 3, 2017, order allowing Bywater to withdraw as decedent's counsel and (2) a February 21, 2017, motion for extension of time to answer and respond to discovery, which was signed by decedent. The co-administrators presented Michael's testimony. After considering the evidence, the court granted petitioner's motion to vacate, noting it was giving petitioner "the benefit of the doubt."

¶ 11        On October 4, 2019, the circuit court held another hearing on the co-administrators' motion to bar petitioner's claim. The co-administrators again presented Michael's testimony. Michael testified he began helping decedent with the farming after their father died. Michael explained decedent was in charge of the farming and made all the decisions. Michael did not discuss decedent's finances with him. When he visited decedent's home, which was about once a month, decedent did not show Michael any documents pertaining to his personal business. Decedent never discussed with Michael a lawsuit with petitioner. At the time of his death, decedent appeared to be preparing his 2016 income taxes. Decedent had paperwork spread out all over his living room floor. In decedent's home, Michael also found large plastic storage bins labeled by the year, which contained documents related to prior years income taxes. Michael did not find any paperwork related to petitioner; petitioner's president, Will Williams; Bywater; or the Virginia lawsuit. Michael testified decedent did not keep extensive records of his bills at his home. Michael explained he was also unaware the IRS had a

lien on decedent's farmland until he was in the process of selling the land. Michael did find a big stack of farm-related receipts in the glove box of decedent's pickup truck. None of the materials were related to petitioner.

¶ 12 Michael also testified about decedent's mail. He and Robert decided to keep decedent's mail going to decedent's home. Michael checked decedent's mailbox five to six times a week. Michael would review every piece of mail and take the bills back to his home. Michael contacted every entity that sent a bill. He also contacted farm implement companies that he knew decedent conducted business with to see if decedent owed money. Michael would pay all the bills as funds became available. Before its October 2018 claim, Michael did not receive any mail from petitioner or Williams. Michael also did not see the order mailed by Bywater, and he did not receive any court documents from Virginia. Michael testified he had no knowledge of any claim outside of Illinois. He did admit Robert opened the mail when Robert was in the area for decedent's funeral. During that time, Robert gave Michael all the mail. Thus, Michael saw all the mail decedent received after his death. He estimated he reviewed around 100 pieces of mail, most of which came within the first 10 weeks after the death notice went out.

¶ 13 Additionally, Michael testified that, with his second answer to interrogatories, he was attempting to explain how he handled paperwork related to the estate. If Michael received a bill, he contacted the creditor and provided the creditor with any necessary documents. Michael also explained he did not know anyone in Virginia, but decedent's friends knew people in Virginia. Michael further testified decedent's friends did not mention decedent's lawsuit with petitioner and did not mention decedent might owe petitioner money.

¶ 14 Petitioner did not present any testimony. Instead, it asked the circuit court to take judicial notice of the documents it presented at the August 30, 2019, hearing. In addition to the

four documents it presented at the August 2019 hearing, petitioner also presented Michael's second answer to the August 2019 interrogatories. In the second answer, Michael stated he did not specifically recall a letter from Bywater. If Michael did get a letter, then he contacted him and informed him of decedent's death. Michael also stated he was generally aware through decedent's friends and associates that people in Virginia including petitioner were aware of decedent's death at the time of decedent's funeral. Michael made sure everyone who needed a death certificate received one.

¶ 15 After hearing the parties' arguments, the circuit court granted the co-administrators' motion to bar petitioner's claim. The court found Michael did not have knowledge of petitioner and its claim. It noted Michael did not receive any mail about petitioner or find any document about it in decedent's records. The court noted Bywater may have mailed a copy of the withdrawal order in the Virginia case. Even if he did, Michael was not aware he received it and the document was not enough to put the estate or Michael on notice decedent owed money to petitioner. Additionally, the court also found Michael's testimony overcame the legal effect of not responding to petitioner's request for admission of facts.

¶ 16 Petitioner filed a timely motion to reconsider, which the circuit court denied after a December 13, 2019, hearing. On December 30, 2019, petitioner filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017), and thus this court has jurisdiction under Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016).

¶ 17 II. ANALYSIS

¶ 18 A. Judicial Admission

¶ 19 Petitioner first asserts the circuit court erred as a matter of law by finding Michael's testimony overcame his judicial admission. The co-administrators disagree with

petitioner's characterization of the circuit court's statement and contend petitioner waived the deemed admissions. Petitioner denies it waived the judicial admission. We review *de novo* a matter of law. See *People v. Johnson*, 206 Ill. 2d 348, 360, 794 N.E.2d 294, 303 (2002).

¶ 20 Illinois Supreme Court Rule 216(a) (eff. July 1, 2014) provides, in pertinent part, "[a] party may serve on any other party a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request." Rule 216(c) further states, in pertinent part, the following:

> "Each of the matters of fact and the genuineness of each document of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why the party cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part." Ill. S. Ct. R. 216(c) (eff. July 1, 2014).

The "failure to comply with Rule 216 will result in a judicial admission that is considered incontrovertible, withdrawing that fact from contention." *In re Application of the County Treasurer & ex officio County Collector*, 2012 IL App (1st) 112897, ¶ 37, 977 N.E.2d 189; see also *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 125, 660 N.E.2d 863, 872 (1995) (noting admissions made under Rule 216 a tantamount to judicial admissions and are to be taken as true).

¶ 21 At the August 2019 hearing, the circuit court deemed admitted under Rule 216 the

following fact:  "Michael[ ] acknowledges receiving mail from Mr. Bywater, the lawyer in Virginia who was representing the decedent."  In granting the co-administrators' motion to bar petitioner's claim at the October 2019 hearing, the court found the following:

> "Michael McLaughlin has testified today that he had no knowledge of anything about National Alliance, didn't receive any mail about them, didn't find any papers amongst the decedent's records, either in the house or in the glove box.
>
> Mr. Bywater, the decedent's former attorney in Virginia, may have mailed a copy of the withdrawal order, order of the Virginia Court authorizing him to withdraw, to John McLaughlin.  Even if he did, Mr. Michael McLaughlin has testified he wasn't aware he received it.  Even if Mr. Bywater did mail a copy of that, under the Lane case, in the Court's mind, that's not enough to put the estate or Michael McLaughlin on any kind of notice that National Alliance was owed money.  So I don't think there's any knowledge on Mr. McLaughlin, Michael McLaughlin's part.  Now the Court did discuss the request to admit at the last hearing, and the Court indicated it would regard the facts requested as admitted because no response was filed within 28 days.  The Court did grant Mr. Jankowicz however an extension of time to reply, and he filed a reply within time, but he didn't file it within 28 days.  The testimony today, I think, overcomes the legal effect of not admitting—or denying, not responding to the request to admit within the 28 days.  So I'm going to deny the request to vacate the bar.  The claim is still barred."

¶ 22    Petitioner contends the circuit court's aforementioned statements indicate the

court made an error of law because judicial admissions under Rule 216 are " 'incontrovertible.' " However, the judicial admission was only Michael received mail from Bywater. Despite petitioner's numerous assertions to the contrary, Michael was not deemed to have admitted he received the March 3, 2017, withdrawal order or any other Virginia court documents. As asserted by the co-administrators, both the admission Michael received a mailing from Bywater and Michael's testimony he did not receive a copy of the March 3, 2017, withdrawal order could be true. Thus, the court was free to conclude Michael did not have knowledge of the Virginia lawsuit even if Bywater's written deposition indicated he mailed a copy of the withdrawal order to decedent's home address in Monticello, Illinois. Accordingly, we do not find the circuit court erred as a matter of law.

¶ 23                                B. Reasonably Ascertainable

¶ 24            Petitioner also asserts (1) the circuit court erred as a matter of law by misinterpreting or misapplying the reasonably ascertainable requirement of section 18-12(a)(3) of the Act (755 ILCS 5/18-12(a)(3) (West 2016)) and (2) the court's finding the co-administrators could not have reasonably ascertained the existence of petitioner's claim was against the manifest weight of the evidence. The co-administrators contend the court properly determined petitioner's claim was not reasonably ascertainable. As previously stated, we review *de novo* a question of law. See *Johnson*, 206 Ill. 2d at 360, 794 N.E.2d at 303. As to questions of fact, we apply the manifest-weight standard of review. *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1139, 818 N.E.2d 357, 368 (2004). "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252, 779 N.E.2d 1115, 1130 (2002).

¶ 25 Section 18-12 of the Act places limitations on the payment of claims against an estate and provides, in pertinent part, the following:

"(a) Every claim against the estate of a decedent, except expenses of administration and surviving spouse's or child's award, is barred as to all of the decedent's estate if:

(1) Notice is given to the claimant as provided in Section 18-3 and the claimant does not file a claim with the representative or the court on or before the date stated in the notice; or

(2) Notice of disallowance is given to the claimant as provided in Section 18-11 and the claimant does not file a claim with the court on or before the date stated in the notice; or

(3) The claimant or the claimant's address is not known to or reasonably ascertainable by the representative and the claimant does not file a claim with the representative or the court on or before the date stated in the published notice as provided in Section 18-3.

(b) Unless sooner barred under subsection (a) of this Section, all claims which could have been barred under this Section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent." 755 ILCS 5/18-12(a), (b) (West 2016).

¶ 26                                    1. *Misinterpretation*

¶ 27 In support of its argument the circuit court misinterpreted the "reasonably ascertainable" language of section 18-12(a)(3), petitioner cites the circuit court's comments about Bywater's mailing at the hearing on petitioner's motion to reconsider. There, the court

- 10 -

stated the following:

> "The Court felt at the end of that hearing, that last hearing, that the estate had met its burden of proof, that Mr. McLaughlin, Michael McLaughlin, and his brother who were the co-administrators, didn't have any notice that [petitioner] was or possibly could be a creditor. The Court still thinks that way.
>
> With regard to the Bywater mailing, Mr. McLaughlin testified he didn't see it. But the Court feels even if he did see it, that by itself isn't enough to put Mr. McLaughlin on notice that [petitioner] might be a creditor. So the motion to reconsider is denied."

Petitioner contends that, if the circuit court barred the claim because Bywater's mailing did not give Michael sufficient knowledge petitioner had filed a counterclaim in decedent's lawsuit against plaintiff, the court's ruling could not have been based on a correct understanding of the "reasonably ascertainable" language. However, the court barred petitioner's claim based on the co-administrators not having any notice petitioner was or could possibly be a creditor. The court's comments about the Bywater mailing at the hearing on the motion to reconsider was an alternative finding. Thus, we find the circuit court did not err as a matter of law because its ruling was not based on Michael receiving the withdrawal order from Bywater.

¶ 28                                  2. *Manifest Weight of the Evidence*

¶ 29          Petitioner further contends the circuit court's finding petitioner's claim was not reasonably ascertainable by the co-administrators was against the manifest weight of the evidence. In support of its claim, petitioner emphasized Michael was an "interested witness" and notes the Virginia court documents, one filed before decedent's death and one after.

¶ 30          Additionally, petitioner cites the following language from *Effler v. Metzger*, 29

Ill. App. 3d 55, 58-59, 329 N.E.2d 327, 329 (1975): "In weighing testimony of witnesses who are otherwise equally credible, one of whom has testified positively to a fact while the other's evidence is negative, the jury is entitled to give greater weight to the positive testimony than to the negative." We note the aforementioned language merely permits a trier of fact to give more weight to positive testimony about a fact where the credibility is otherwise equal but does not require it to do so. The *Effler* court also noted the weight of the evidence does not depend on the number of witnesses testifying or the amount of evidence compiled. *Effler*, 29 Ill. App. 3d at 59, 329 N.E.2d at 329. Thus, the amount of petitioner's evidence does not mean it is entitled to greater weight than Michael's testimony. Additionally, in *Effler*, the reviewing court concluded the trial court abused its discretion because it substituted its judgment for that of the jury's in granting the defendants' a new trial where sufficient evidence supported the jury's verdict and the circuit court gave no reason for its ruling. *Effler*, 29 Ill. App. 3d at 59, 329 N.E.2d at 329-30. In this case, petitioner is essentially asking this court to substitute our judgment for that of the circuit court.

¶ 31        This court has explained section 18-12(a) of the Act (755 ILCS 5/18-12(a) (West 2016) as follows:

> "[C]laimants who file a claim more than six months from the issuance of letters bear the initial burden of producing evidence sufficient to establish their failure to receive written notice by mail or delivery under section 18-3 of the Act. Upon such a showing, the burden then shifts to the estate representative to show either that the statutory notice was given, which will automatically bar the claim, or, in the absence of notice, that the existence of the claim was not reasonably ascertainable upon reasonably diligent efforts. If the estate representative is able

- 12 -

to prove this latter proposition by a preponderance of the evidence, then the claim will be barred.

In determining whether the estate representative has met her burden on this latter proposition, the focus should not be on the actual knowledge of the claim by the executrix nor upon what she subjectively understood legal documents to mean had she looked for them and discovered them. Rather, the focus is on the efforts expended by the executrix in attempting to discover claims against the estate.

Minimum standards of diligent inquiry would necessitate a good-faith search of decedent's personal and business financial records to disclose debts of the estate, a search comparable to that required to marshal assets and compile a complete inventory of the estate. Since decedent ran his own business, reasonably diligent efforts might include inquiry of those persons and concerns with whom Anderson Trucking had continuing business (*e.g.*, Central) as to what debts, if any, decedent had outstanding." *In re Estate of Anderson*, 246 Ill. App. 3d 116, 129-30, 615 N.E.2d 1197, 1206 (1993).

There, the circuit court had granted a directed finding in favor of the estate noting the debts were not reasonably ascertainable by the executrix and thus time barred. *Anderson*, 246 Ill. App. 3d at 128, 615 N.E.2d at 1205. Specifically, it found the executrix did not have knowledge of the debts and it would take a " 'pretty sophisticated inquiry' " to determine the debts existed from business papers of the decedent's trucking business. *Anderson*, 246 Ill. App. 3d at 128, 615 N.E.2d at 1205. Since the circuit court did not undertake the analysis this court set forth above, we vacated the circuit court's ruling holding the claims time barred and remanded for further

proceedings for the estate to present evidence of its " 'reasonably diligent efforts.' " *Anderson*, 246 Ill. App. 3d at 130, 132, 615 N.E.2d at 1206-08.

¶ 32    In this case, the facts are undisputed petitioner did not receive notice, and thus the co-administrators had to prove by a preponderance of the evidence "the existence of the claim was not reasonably ascertainable upon reasonably diligent efforts." *Anderson*, 246 Ill. App. 3d at 129, 615 N.E.2d at 1206.  Like *Anderson*, decedent in this case was a farmer and thus ran his own business.  As to the efforts expended by the co-administrators in attempting to discover claims against decedent's estate (*Anderson*, 246 Ill. App. 3d at 130, 615 N.E.2d at 1206), Michael testified he went through decedent's home looking for financial documents and observed decedent did not keep extensive financial records.  The materials Michael did find were plastic bins containing documents related to past year's income taxes.  Michael also located a plastic bin containing some documents related to the 2016 income tax year, and other documents related to that year's taxes were spread out on decedent's living room floor.  He did not find other financial documents in decedent's home.  Michael did find some receipts related to purchases made for the farm in the glove box of decedent's pickup truck.

¶ 33    Additionally, Michael testified he and Robert kept decedent's mail going to decedent's home address.  Michael looked through every piece of mail to see if it was a bill that needed to be paid, except for after decedent's funeral when Robert looked through the mail for a few days.  During that period, Robert brought the mail to Michael.  When Michael received a bill, Michael contacted the individual or company to see what information it needed from Michael.  Michael also paid the bills as money became available.  In addition to looking through the house and mail, Michael contacted local businesses that he knew decedent dealt with to see if decedent owed money.  Michael explained he contacted implement companies to see how much

money decedent still owed on farming equipment.

¶ 34    As to petitioner's claim, Michael testified he did not discover any documents from Bywater or petitioner. Michael also explained decedent did not discuss his finances with Michael and never revealed any documents relating to his personal business or finance. Michael further testified he had no idea any entity outside of Illinois had a claim against decedent's estate.

¶ 35    Petitioner notes decedent signed on February 17, 2017, a document in the Virginia case, which listed decedent as the plaintiff/counterclaim defendant. Petitioner contends the document alerts the reader to petitioner's claim. Petitioner asserts it is difficult to believe decedent did not keep a copy of the document, and the document should have been found. Petitioner then notes the March 3, 2017, order allowing Bywater to withdraw as counsel and Bywater's written deposition, in which Bywater stated he mailed a copy of the order to decedent's home address in Monticello, Illinois. Bywater did not state decedent's full address and admitted he did not have a record showing he mailed a copy of the order to decedent's home address. Next, petitioner notes the fact admitted under Rule 261 and Michael's answers to interrogatories, in which Michael stated he did not recall a letter from Bywater, and if he did get a letter from Bywater, he would have contacted Bywater to inform him of decedent's death. In his answers, Michael also stated he was generally aware through decedent's friends and associates that people in Virginia and petitioner were aware of decedent's death at the time of his funeral. During his testimony, Michael explained decedent's friends mentioned people in Virginia and petitioner, but those friends neither mentioned a lawsuit between decedent and petitioner nor noted decedent owed petitioner money. Michael testified he did not really have any knowledge of petitioner until the passing of the claim date.

¶ 36     We find the co-administrators presented sufficient evidence for the circuit court to find by a preponderance of the evidence the existence of petitioner's claim was not reasonably ascertainable upon the co-administrators' reasonably diligent efforts. As stated, Michael not only went through decedent's home and mail looking for documents showing potential claims but also went to businesses decedent was known to patronize to see if decedent owed the businesses money. Michael testified he was unaware of (1) the lawsuit between decedent and his brother until petitioner's claim and (2) any potential claims outside of Illinois. While petitioner presented some evidence Michael should have learned of petitioner and its claim, the court as the trier of fact could have found the co-administrators' evidence more credible than petitioner's. "It is well established that when applying a manifest weight of the evidence standard, a reviewing court will not substitute its judgment for that of the trial court on such matters as witness credibility, the weight to be given evidence, and the inferences to be drawn from the evidence *** ." *Dore v. Quezada*, 2017 IL App (1st) 162142, ¶ 25, 77 N.E.3d 764. Accordingly, we find the circuit court's determination petitioner's claim was not reasonably ascertainable by the co-administrators was not against the manifest weight of the evidence.

¶ 37                              III. CONCLUSION

¶ 38     For the reasons stated, we affirm the Piatt County circuit court's judgment.

¶ 39     Affirmed.