NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220202-U

NO. 4-22-0202

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| JEREMIAH KELLERMAN, | ) | Appeal from the |
| Petitioner-Appellant, | ) | Circuit Court of |
| v. | ) | Whiteside County |
| MARK HECKMAN, | ) | No. 22OP9 |
| Respondent-Appellee. | ) | |
| | ) | Honorable |
| | ) | Norma Kauzlarich, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, finding the circuit court's denial of petitioner's
             request for a civil no contact order was not against the manifest weight of the
             evidence.

¶ 2         Petitioner, Jeremiah Kellerman, filed a verified petition requesting the circuit

court issue a civil no contact order on behalf of a minor, K.K., against respondent, Mark

Heckman, following allegations of nonconsensual sexual conduct or nonconsensual sexual

penetration. Following a hearing, the court denied petitioner's request, finding he failed to prove

by a preponderance of the evidence respondent sexually abused K.K. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         In January 2022, petitioner filed a verified petition for a civil no contact order

against respondent on behalf of his eight-year-old daughter, K.K. The petition alleged, in part,

K.K. presented with a bruise on her stomach at some point during the summer of 2021, and respondent "picked [K.K.] up because [he] said he wanted to look at her bruise. [Respondent] then pulled [K.K.]'s pants down past her privates." On a separate occasion, respondent picked K.K. up, "put his two fingers on her vagina," and moved his fingers around. The petition further alleged this "happened on the outside of the clothes," and as the summer progressed, respondent "would pick [K.K.] up and rub his fingers on her vagina harder each time he would do it."

¶ 5 In March 2022, the circuit court held an evidentiary hearing on the verified petition. K.K. testified she was eight years old and was in second grade. K.K. testified about learning the difference between good and bad touches in school several months before, and she described a bad touch as when "somebody touches you inappropriately or looks at you inappropriately and you have no clothes on or anything." When asked if anyone "touched [her] inappropriately or [did] a bad touch," K.K. responded in the affirmative and stated, "[I]t was in the summer." Thereafter, K.K. testified respondent "picked [her] up a lot" and "touched [her] in a way [she] did not like." K.K. stated, when respondent picked her up, he put his fingers on her "private" and "moved them a little." She then demonstrated by making a circular motion and recalled it happening "three or four times." K.K. testified the incidents made her "sad and like a little *** mad and stuff." K.K. also testified about another incident during this period where respondent pulled her pants down "a little too far" to observe a bruise on her stomach. K.K. could not recall how she got the bruise but explained she "just get[s] bruises" because she is "always jumping off of stuff" and doing other "crazy stuff." K.K. explained she did not realize respondent's touching of her privates was a "bad thing to do" until after learning about good and bad touches and that is when she told her father, petitioner.

¶ 6        On cross-examination, K.K. acknowledged, during the summer months, if she heard respondent say, "I don't have work tomorrow, [she] would *** ask if [she] could stay home." When asked if she thought respondent touching her "was an accident," K.K. said she did not know. She testified her mother was away at work each time it happened.

¶ 7        Respondent testified he was engaged to Katrina Stewart, petitioner's ex-wife and K.K.'s mother. At the time of the hearing, respondent and Stewart had resided together for approximately "three or four" years. Respondent further testified K.K. and her other sibling would reside with them every other week.

¶ 8        Respondent testified he was employed by "Platinum" in the summer of 2021 and was currently employed full-time at Nestle Purina. He "sometimes *** work[ed] from home" and would be there with the children without Stewart "once every week or every two weeks maybe" while she worked. According to respondent, the children attended a daycare program at the YMCA during the summer and, "if [respondent] didn't have to work, they would beg to *** stay at the house with [him]." Respondent denied rubbing his fingers against K.K.'s vagina and pulling her pants down to observe a bruise on her stomach. Although respondent testified he was never alone with K.K. without other children around, he later admitted, during cross-examination, that there were times when he was alone with K.K. outside the presence of her other siblings. On redirect examination, respondent elaborated on the inconsistencies in his testimony, stating:

            "I'm not—it was never—there was always kids running
            around everywhere, so there's never a time I'm alone, because the
            kids are up and down the stairs running all over the place, so I'm
            not—I don't know what—you know what I'm saying? They're all

over the place, downstairs, going back and forth, wrestling and playing around, so there would never actually be an alone time with one child and not the other."

¶ 9        At the close of the evidence, the circuit court summarized the testimony elicited during the hearing and found K.K. was "very honest and says that she gets bruises all the time because she does crazy stuff." However, the court believed "she might be a little confused" and ultimately determined "it was a touching that was misinterpreted by her." In doing so, the court pointed to K.K.'s uncertainty as to whether respondent's touching her was an accident and noted K.K. "kept saying [respondent] picks me up." The court also went on to say the evidence was insufficient to show respondent touched K.K. for respondent's sexual gratification or arousal, stating, "There was no testimony that [respondent] said anything like does this feel good or do you like it or anything like that." Based upon these reasons, the court found petitioner had not established K.K.'s version of the events was more probable than not. Therefore, the court denied petitioner's request for a civil no contact order.

¶ 10       This appeal followed.

¶ 11                              II. ANALYSIS

¶ 12       On appeal, petitioner asserts the circuit court's decision to deny the plenary civil no contact order stands against the manifest weight of the evidence.

¶ 13       The purpose of the Civil No Contact Order Act (Act) (740 ILCS 22/101 *et seq.* (West 2020)) is to provide a civil remedy to protect victims of sexual assault from future interactions with the offender. 740 ILCS 22/102 (West 2020). Under the Act, a petition may be filed "by a person on behalf of a minor child *** who is a victim of non-consensual sexual conduct or non-consensual sexual penetration but, because of age, disability, health, or

- 4 -

inaccessibility, cannot file the petition." 740 ILCS 22/201(b)(2) (West 2020). The statute defines "non-consensual" as a "lack of freely given agreement." 740 ILCS 22/103 (West 2020). "Sexual conduct" means "any intentional or knowing touching or fondling by the petitioner or the respondent, either directly or through clothing, of the sex organs, anus, or breast of the petitioner or the respondent, or any part of the body of a child under 13 years of age, *** for the purpose of sexual gratification or arousal of the petitioner or the respondent." 740 ILCS 22/103 (West 2020).

¶ 14    In a request for a civil no contact order, the petitioner bears the burden of proving the allegations contained in a verified petition by a preponderance of the evidence. 740 ILCS 22/204(a) (West 2020). When deciding whether the circuit court correctly denied a request for a civil no contact order, we review the circuit court's findings by applying a manifest weight of the evidence standard. *J.M. v. Briseno*, 2011 IL App (1st) 091073, ¶ 39, 949 N.E.2d 779. "A decision is contrary to the manifest weight of the evidence when the opposite conclusion is apparent or when the decision is unreasonable, arbitrary, or not based on the evidence." *Enbridge Energy (Illinois), LLC v. Kuerth*, 2018 IL App (4th) 150519-B, ¶ 62, 99 N.E.3d 210.

¶ 15    Here, petitioner essentially urges this court to reweigh the evidence and find in his favor. However, "when applying a manifest weight of the evidence standard, a reviewing court will not substitute its judgment for that of the trial court on such matters as witness credibility, the weight to be given evidence, and the inferences to be drawn from the evidence, even if the reviewing court would have reached a different conclusion if it had been the trier of fact." *Dore v. Quezada*, 2017 IL App (1st) 162142, ¶ 25, 77 N.E.3d 764. In making this determination, we are mindful of the fact the circuit court had the opportunity to hear and see the witnesses and, as such, it was in a superior position to weigh the evidence and determine the credibility of the

witnesses. See *Wade v. Stewart Title Guaranty Co.*, 2017 IL App (1st) 161765, ¶ 59, 82 N.E.3d 763. In that regard, the court considered all of the evidence before it and explicitly found K.K. was "very honest," but it believed "she might be a little confused." Based on the record before us, it appears the circuit court assigned significant weight to K.K.'s testimony that she did not know if respondent touched her on accident. Unfortunately, the question did not draw an objection since it called for the witness—a very young and undoubtedly nervous witness—to speculate on the state of mind of respondent when he touched her. Regardless, it became part of the evidence upon which the court could rely. The court, although improperly relying upon its own experience as a "sex abuse prosecutor" (See *People v. Pellegrini*, 2019 IL App (3d) 170827, ¶ 64, 137 N.E.3d 182), also noted the lack of evidence the incidences of touching were for the purpose of respondent's sexual gratification. This too was based on an apparent mistaken belief respondent needed to say something to evince his intent when touching K.K. in order to establish the touching was for the purposes of sexual gratification. See *People v. Burton*, 399 Ill. App. 3d 809, 813, 927 N.E.2d 240, 243 (2010) (stating a defendant's "intent to arouse or gratify himself sexually can be inferred solely from the nature of the act"). The court ultimately concluded, based on a preponderance of the evidence, "it was a touching that was misinterpreted by [K.K.]"

¶ 16 Were we in a position to reweigh the evidence, the decision may well have been different. However, that is not within our purview under our standard of review in this case. See *Quezada*, 2017 IL App (1st) 162142, ¶ 25. Accordingly, because the evidence does not lead us clearly to the opposite conclusion, we cannot say the circuit court's denial of petitioner's request for a civil no contact order in this case was against the manifest weight of the evidence. See *Kuerth*, 2018 IL App (4th) 150519-B, ¶ 62.

¶ 17 III. CONCLUSION

¶ 18        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 19        Affirmed.