09-5368-cv
Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corporation

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2009

(Argued: June 23, 2010)                                    Decided: August 31, 2010)

Docket No. 09-5368-cv

———————————

SINOYING LOGISTICS PTE LTD., ACOAXET 1 SHIPPING PTE LTD.,

     *Plaintiffs-Appellants,*

THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED,

     *Intervenor-Plaintiff,*

     v.

YI DA XIN TRADING CORPORATION, YI DA XIN TRADING CO. LTD., YI DA XIN LIMITED,

     *Defendants-Appellees.*[*]

Before: WINTER, CABRANES, WESLEY, *Circuit Judges.*

———————————

Plaintiffs appeal from a December 15, 2009 order of the United States District Court for the

Southern District of New York (Denny Chin, *Judge*) vacating the process of maritime attachment and

garnishment dated April 21, 2008 pursuant to Rule B of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure and

---

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the
listing of the parties above.

1

dismissing the complaint for lack of personal jurisdiction. We hold that the District Court acted within its discretion in vacating the attachment. We also now hold that the District Court properly dismissed the case *sua sponte* for lack of personal jurisdiction, and we hold that the District Court did not err in declining to fashion an equitable remedy in circumstances where it was clear that the original attachment order could not be sustained in light of *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). The order of the District Court is **AFFIRMED**.

> CHRISTOPHER R. NOLAN (Michael J. Frevola, *on the brief*), Holland & Knight, LLP, New York, NY; and Patrick F. Lennon, Lennon Murphy Caulfield & Phillips, LLC, New York, NY, *for Plaintiffs-Appellants*.

> BRUCE E. CLARK (H. Rodgin Cohen, Michael M. Wiseman, and Erez J. Davy, *of counsel*), Sullivan & Cromwell LLP, New York, NY, *for amicus curiae The Clearing House Association L.L.C. in support of affirmance*.

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether a district court can dismiss a maritime complaint *sua sponte* for lack of personal jurisdiction where the sole basis for *quasi in rem* jurisdiction asserted under Rule B has been eliminated.

Plaintiffs appeal from a December 15, 2009 judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*) in which the District Court dismissed their complaint for want of jurisdiction after vacating an order attaching funds at several banks pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Rule B"). On appeal, plaintiffs argue that the District

2

Court erred in (1) raising the question of personal jurisdiction *sua sponte* and (2) declining to fashion an equitable remedy.

## BACKGROUND

This case arises out of a maritime dispute between plaintiffs Sinoying Logistics Pte Ltd. and Acoaxet 1 Shipping Pte Ltd. (jointly, "Sinoying") and defendants Yi Da Xin Trading Corporation, Yi Da Xin Trading Co. Ltd., and Yi Da Xin Limited (jointly, "YDX"). The dispute concerns YDX's alleged breach of a charterparty (*i.e.*, a maritime contract), signed January 18, 2008, under which Sinoying, a foreign-based charter company, agreed to deliver the vessel *M/V Acoaxet Lady* to YDX, a Philippines- and Hong-Kong-based shipping company, in the port of Santa Cruz, Phillippines. Shortly before delivery, YDX, Sinoying alleges, attempted to cancel the charterparty and refused to pay Sinoying for delivery of the vessel.

Pursuant to the charterparty, Sinoying and YDX have agreed to resolve all aspects of this dispute in arbitration in Hong Kong. However, on April 21, 2008, Sinoying filed a complaint in the District Court, seeking to attach YDX's property in New York as pre-judgment security for the pending arbitration in Hong Kong. On April 21, 2008 the District Court—consistent with the law at the time—signed an order of maritime attachment and garnishment ("the attachment") under Rule B attaching, among other things, electronic funds transfers ("EFTs") originating from or intended for YDX at several banks in the district. YDX has not appeared in the District Court to raise or waive an objection to the District Court's personal jurisdiction over it or to argue the merits of the case.

3

Between July 16, 2008 and September 4, 2009, three "intermediary banks"[1] in the Southern District of New York restrained four EFTs in compliance with the attachment order. Each of the restrained EFTs were either originated by or intended for YDX and transmitted by originating banks in Hong Kong, Vietnam, China, and the Philippines to beneficiary banks in those countries.[2] In each case, the intermediary bank in New York "cleared" a foreign dollar-denominated interbank transaction, which required that the EFT be routed, momentarily, through the Southern District of New York. *See Citibank, N.A. v. Wells Fargo Asia Ltd.*, 495 U.S. 660, 663 (1990) (explaining the process of "clearing" transactions between foreign-dollar-denominated accounts in New York); *see also Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 60 n.1 (2d Cir. 2009) (explaining the operation of EFTs). Thus, despite the fact that no aspect of the merits of the underlying dispute would be litigated in the United States, Sinoying attempted—successfully at first— to use the fact

---

[1] Under New York law, an "[i]ntermediary bank" is "a receiving bank other than the originator's bank or the beneficiary's bank." N.Y. U.C.C. § 4-A-104(2); *see also Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 70 (2d Cir. 2009) ("When there is no federal maritime law to guide our decision, we generally look to state law to determine property rights.").

[2] The District Court's first attachment order dated April 21, 2008 granted Sinoying's request to attach up to $440,480 arising from YDX's alleged breach of the charterparty. On July 16, 2008, Bank of America, N.A. restrained an EFT from an originating bank in China in the amount of $400,000 intended for YDX's account at a bank in the Philippines, leaving the attachment undersecured by $40,480. HSBC USA, N.A. subsequently restrained an EFT originated by YDX in Hong Kong in the amount of $196,870.28. At the request of plaintiff-intervenor Hongkong and Shanghai Banking Corporation Limited, the District Court ordered the release of $156,390.28—the amount in excess of the $40,480 that fully secured Sinoying's attachment order.

On July 2, 2009, at Sinoying's request, the District Court increased the amount of the attachment order to $649,480 to account for Sinoying's arbitral costs in Hong Kong and the interest on the principal owed to Sinoying by YDX. On September 4, 2009, Wachovia Bank, N.A. restrained two additional EFTs—originating from bank accounts in Vietnam and the Philippines and intended for bank accounts in the Philippines and Hong Kong, respectively— in the amount of $521,928.50 cumulatively. As a result, the District Court's attachment orders left Sinoying fully secured in aid of any recovery in the arbitration in Hong Kong.

4

that wire transfers between two foreign banks might be processed momentarily at a bank in New York to establish the District Court's personal jurisdiction over YDX.

On October 13, 2009, a Hong Kong arbitration panel issued an "Interim Final Arbitration Award" in favor of Sinoying finding YDX to be fully liable.

On October 16, 2009, we decided *Jaldhi*, overruling *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002).[3] *Jaldhi* held that EFTs temporarily in the hands of an intermediary bank were not attachable property of the originator or beneficiary under New York law, and accordingly not subject to attachment under Rule B. *Jaldhi*, 585 F.3d at 71.[4] As a consequence of *Jaldhi*, EFTs between two banks outside of the United States that "pass[] through New York electronically for an instant" cannot be attached and therefore cannot be used to vest a district court with personal jurisdiction over the beneficiary or originator of the transaction. *Id.* at 60. Because *Jaldhi* transformed the law of Rule B attachments in our Circuit, the District Court on October 26, 2009 ordered Sinoying to show cause why it should not vacate the attachment order.

In response to the District Court's order to show cause, Sinoying argued that *Jaldhi* (1) was incorrectly decided; (2) should not be applied retroactively to EFTs restrained pursuant to attachment orders entered pre-*Jaldhi*; and (3) was inapplicable where the intermediary bank had secured funds associated with the restrained EFT in a suspense account within the Southern District

---

[3] We overruled *Winter Storm* without a formal *en banc* proceeding with the consent of all active judges on our Court. *See Jaldhi*, 585 F.3d at 67 & n.9.

[4] Rule B(1)(a) of the Admiralty Rules provides, in relevant part:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. R. B(1)(a).

5

of New York. Sinoying did not allege that there was an alternative basis on which to establish personal jurisdiction over YDX. The District Court rejected each of Sinoying's arguments and concluded that, pursuant to *Jaldhi* and *Hawknet Ltd. v. Overseas Shipping Agneices*, 590 F.3d 87, 91 (2d Cir. 2009) ("[T]he rule announced in [*Jaldhi*] has retroactive effect to *all* cases open on direct review.") (emphasis added), the District Court did not have personal jurisdiction over YDX. Accordingly, on December 15, 2009, the District Court vacated the attachment and dismissed the complaint for want of personal jurisdiction. That same day—December 15, 2009—the Hong Kong arbitration panel issued a "Final Arbitration Award" in Sinoying's favor.

Sinoying filed a timely appeal of the District Court's December 15, 2009 judgment. It also filed a motion before this Court seeking to stay the District Court's judgment pending appeal. On January 4, 2010, Judge Katzmann ordered that the stay motion "be determined by a motions panel in due course." He also provided that the District Court's judgment be "stayed temporarily pending the decision of the panel on the motion." On April 14, 2010, a motions panel granted Sinoying's stay motion. As a result, the funds seized in this case have remained in suspense accounts throughout the pendency of this appeal.[5]

In addition, following the District Court's December 15, 2009 judgment—but before this Court granted Sinoying's stay motion—Sinoying brought an action in the Supreme Court of New York, New York County, seeking to confirm its arbitral award under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. Sinoying informs us that on April 8, 2010, the Supreme Court of New York, New

---

[5] A "suspense account" is an account into which funds associated with suspended EFTs are often placed pending further instructions to the bank. *See Scanscot Shipping Serv. (Deutschland) GmbH v. Metales Tracomex LTDA*, No. 09-5280, — F.3d —, 2010 WL 3169304 at *2 (2d Cir. Aug. 12, 2010) (holding that, following *Jaldhi*, suspense accounts are not attachable property of the defendant under Rule B).

York County, entered a judgment against YDX in the amount of $757,610.95. Appellants' Br. in Resp. to *Amicus Curiae* 8. We consider Sinoying's proceeding in the Supreme Court to be wholly collateral to the judgment of the District Court under review here.

## DISCUSSION

"We generally review a district court's decision to vacate a maritime attachment for abuse of discretion." *Jaldhi.*, 585 F.3d at 66 (internal quotation marks omitted); *see also Lynch v. City of N.Y.*, 589 F.3d 94, 99 (2d Cir. 2009) ("A district court has abused its discretion if it has (1) 'based its ruling on an erroneous view of the law,' (2) made a 'clearly erroneous assessment of the evidence,' or (3) 'rendered a decision that cannot be located within the range of permissible decisions.'" (quoting *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008)).

We review *de novo* a decision to dismiss a complaint for lack of personal jurisdiction. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

### A.

Sinoying does not dispute that the District Court was empowered to revisit and vacate *sua sponte* the order attaching YDX's assets in New York. There is no question that a district court has the authority to "revise[]" any non-final order "at any time before the entry of a judgment." Fed. R. Civ. P. 54(b); *accord In re WTC Disaster Site*, 414 F.3d 352, 381 (2d Cir. 2005). Indeed, "a district court *must vacate* an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rule[] B . . . ." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) (emphasis added), *abrogated on other grounds by Jaldhi*, 585 F.3d 58. Therefore, if, at any point, a plaintiff in a maritime attachment case ceases to be able to satisfy the requirements of Rule B, a district court may—and indeed *should*—revisit and vacate any orders of attachment. That is exactly what happened here.

7

In the wake of *Jaldhi* and *Hawknet*, the District Court correctly concluded that the attached EFTs, which were suspended at intermediary banks in New York, were not attachable property of YDX within the meaning of Rule B. It therefore did not err, much less "abuse its discretion," in vacating the attachment order with respect to the funds that had already been seized.[6]

Nor did the Court "abuse its discretion" when it vacated the attachment order in its entirety, preventing any future funds from being seized. A Rule B attachment is proper only where, among other things, "the defendant's property may be found within the district." *Aqua Stoli*, 460 F.3d at 445. Because EFTs from or to YDX at intermediary banks are not YDX's property following *Jaldhi*, and because plaintiff's have acknowledged that the funds associated with the EFTs in this case are the only known assets of YDX, the District Court had good reason to conclude that no property of YDX would ever be found within the district. Rather than vacate the attachment order immediately, however, the District Court—rightly, we think—first gave Sinoying the opportunity to show cause why the attachment order should not be vacated. In response, Sinoying was unable to show that YDX would *ever* have property in the district that could be attached under Rule B. In those circumstances, is was by no means an abuse of discretion for the District Court to vacate the attachment order.

Third, and finally, with the order of attachment vacated, the District Court did not err when, acting *sua sponte*, it raised its lack of personal jurisdiction over YDX and dismissed the complaint on that ground. Sinoying argues that "[p]ersonal jurisdiction is a right that is the defendant's [alone] to raise or waive," and thus the district court was not empowered to raise its lack of personal

---

[6] Because the attachment order was properly vacated, the funds seized in this action should now be released and routed in accordance with the instructions of the original EFTs (*i.e.*, as if they had never been attached in the first place). We intimate no view as to whether the funds can be subsequently attached in aid of Sinoying's judgment in New York Supreme Court. That is an issue to be decided by the New York Supreme Court.

jurisdiction *sua sponte*. Appellants' Br. in Resp. to *Amicus Curiae* 16. That argument, however, ignores the important distinction in our case law between appearing and non-appearing parties with respect to defenses of personal jurisdiction.

Because personal jurisdiction can be waived by a party, *see Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-05 (1982); *"R" Best Produce, Inc., v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008), a district court should *not* raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court, *see, e.g.*, *Popper v. Podhragy*, 48 F. Supp. 2d 268, 271-72 (S.D.N.Y. 1998) ("Once waived, lack of personal jurisdiction may not be raised by the court *sua sponte*.") (citing *Zelson v. Thomforde*, 412 F.2d 56, 58 (3d Cir. 1969)). But when a defendant declines to appear, a plaintiff generally proceeds by means of a motion for default judgment, *see generally* Fed. R. Civ. P. 55, and we agree with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant, *see, e.g.*, *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("In most circumstances, a defect in personal jurisdiction is a defense that may be asserted or waived by a party. Nevertheless, when a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." (citation omitted)); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties. In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment."); *accord System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (same); *see also Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C.

9

Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant.").[7]

Here, Sinoying's complaint asserted a breach-of-maritime-contract claim and sought a Rule B attachment.[8] The District Court did not "abuse its discretion" in denying the Rule B attachment. Because YDX has never appeared "to plead or otherwise defend" the breach-of-maritime-contract claim, Fed. R. Civ. P. 55(a), were Sinoying permitted to pursue that claim, it would do so by means of a motion for default judgment. It was therefore correct for the District Court—in anticipation of an eventual motion for default judgment—to inquire into its personal jurisdiction over YDX and to order Sinoying to show cause why the complaint should not be dismissed. In so doing the Court was not asserting a defense on behalf of YDX, as Sinoying contends, but rather, "exercis[ing] its responsibility to determine that it ha[d] the power to enter [a] default judgment." *Williams*, 802 F.2d at 1203.

Again, moreover, the District Court did not act without first giving Sinoying an opportunity to establish that the Court had personal jurisdiction over YDX. Rather, the District Court first ordered Sinoying to show cause why the complaint should not be dismissed, and in response to that order, Sinoying was unable to establish any basis on which the Court might establish personal jurisdiction over YDX. Indeed, YDX is a foreign entity with no operations or contacts in the

---

[7] Our sister circuits appear to *require* a district court to investigate its personal jurisdiction over a defendant before entering a default judgment. *See, e.g.*, *Williams*, 802 F.2d at 1203 ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an *affirmative duty* to look into its jurisdiction both over the subject matter and the parties." (emphasis added)). We need not—and explicitly do not—address here whether a district court *must* investigate its personal jurisdiction over defendant before entering a default judgment. We leave that issue for another day and hold only that a court *may* raise personal jurisdiction *sua sponte* when a defendant has failed to appear.

[8] We note that Sinoying has never moved to amend its complaint to add a claim to confirm its arbitration award. It has, instead, sought to confirm its arbitration award in the collateral proceeding in New York Supreme Court.

10

United States, and Sinoying was unable to identify any property of YDX that was likely to pass through the district and thereby provide the basis for *quasi in rem* jurisdiction (that is, apart from EFTs in the hands of intermediary banks, which, following *Jaldhi*, are not attachable property). Accordingly, the Court properly raised its lack of personal jurisdiction *sua sponte* and correctly dismissed the complaint on that ground.

**B.**

Sinoying makes one further argument. It contends that *Hawknet* should be read to apply selectively to pre-*Jaldhi* attachments based on an examination of equitable considerations. Accordingly, Sinoying claims that the District Court erred in failing to consider the equities in this case, which, according to Sinoying, "overwhelmingly favor" sustaining the attachment and eventually releasing the attached funds to Sinoying. Appellants' Br. in Resp. to *Amicus Curiae* 20. We reject that claim.

First, the District Court did not err in refusing to disregard *Jaldhi*. *Hawknet* holds unequivocally that "the rule announced in [*Jaldhi*] has retroactive effect to *all* cases open on direct review." 590 F.3d at 91 (emphasis added). Thus, far from encouraging district courts to apply *Jaldhi* selectively based on an examination of the equitable considerations in the remaining EFT-attachment cases, *Hawknet* requires district courts to vacate any attachment orders granted before our decision in *Jaldhi* insofar as those orders are now inconsistent with *Jaldhi*.

Anticipating future parties' reliance on *Winter Storm* for the proposition (rejected by the District Court) that *Hawknet* should not be applied to attachments entered before *Jaldhi*, we observed in *Hawknet*:

> Although we recognize that the parties relied on *Winter Storm Shipping, Ltd. v. TPI* . . . when structuring their transactions, the Supreme Court has held that a reliance interest is insufficient to overcome the presumption of retroactivity set forth in *Harper* [*v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993)]. *Reynoldsville Casket Co. v. Hyde*, 514 U.S.

11

749, 753-54 (1995).  Accordingly, the presumption of retroactivity set
forth in *Harper* applies in this case.

*Id.* at 91 n.7.  Sinoying now argues that our reference to the "presumption of retroactivity set forth

in *Harper*" requires the selective application of *Jaldhi* in circumstances where that presumption can be

overcome by equitable considerations.

 This argument misconstrues the law of retroactivity and is explicitly foreclosed by our case

law.  *See Scanscot*, 2010 WL 3168304, at *3 ("We reject [the] argument that *Jaldhi*'s retroactivity is

subject to a case-by-case rebuttable presumption.").  In *Harper*, the Supreme Court held that a rule

applied to the parties in a case before the Court "is the controlling interpretation of federal law and

must be given full retroactive effect in all cases still open on direct review and as to all events,

regardless of whether such events predate or postdate our announcement of the rule." *Harper*, 509

U.S. at 97.  That is precisely our holding in *Hawknet* with respect to the retroactive application of the

rule announced in *Jaldhi*.

 In subsequent cases, the Supreme Court has recognized two classes of cases in which

"special federal policy concerns" may justify suspending the ordinary presumption in favor of

retroactivity.  *See, e.g.*, *Reynoldsville*, 514 U.S. at 757-58; *see also id.* at 761 (Kennedy, J. concurring)

(recognizing that courts "may shape relief in light of disruption of important reliance interests or the

unfairness caused by unexpected judicial decisions" to overcome the ordinary rule of retroactivity

but citing as examples only "two classes of cases").

 The first class of cases involves qualified immunity, in which a government official sued at

*Time 1* for conduct which does not give rise to a legitimate cause of action until *Time 2* has a

qualified immunity defense because the new rule of law was not "clearly established" at *Time 1*.  *See*

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("If the law at [the] time [an action occurred] was not

clearly established, an official could not reasonably be expected to anticipate subsequent legal

12

developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.").

The second class of cases involves the finality bar to *habeas corpus* petitions, a rule established by the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 310 (1989), under which "[n]ew legal principles, even when applied retroactively, do not apply to cases already closed," *Reynoldsville*, 514 U.S. at 758 (discussing *Teague* and the presumption of retroactivity).

The equitable interests Sinoying asserts fall into neither of those narrow exceptions to the presumption in favor of retroactivity. Sinoying can point to no support for the proposition that the equitable considerations present in the lingering cases in which an attachment order was granted before our holding in *Jaldhi* raise the kind of "special finality-related concerns" which justify an exception to the normal rule of retroactivity. *Id.* To the contrary, the Supreme Court has characterized the presumption of retroactivity to which we referred in *Hawknet*, 590 F.3d at 91 n.7, as an approach which "scarcely permit[s] the substantive law to shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule," *Harper*, 509 U.S. at 97 (internal quotation marks and alterations omitted). To suspend the retroactive application of *Jaldhi* based on the "particular equities" of Sinoying's claims would be to "permit the law to shift and spring" in precisely the manner the Supreme Court has forbidden.

## CONCLUSION

To summarize, we hold as follows:

(1) The District Court did not err, much less "abuse its discretion," in vacating the order of maritime attachment because (1) the only funds seized were EFTs in the hands of intermediary banks and thus no longer considered attachable property of YDX; and (2) Sinoying was unable to

make any showing that other attachable funds or property of YDX were likely to pass through the district.

(2) The District Court did not err in raising the issue of personal jurisdiction *sua sponte* and dismissing the complaint on that ground because YDX had not appeared to defend Sinoying's claim and the sole basis for *quasi in rem* jurisdiction had been eliminated.

(3) Sound policy and justice—as well as our case law—foreclose the selective application of *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte. Ltd.*, 585 F.3d 58, 71 (2d Cir. 2009), based on equitable considerations such as those raised by appellants here.

Accordingly, the judgment of the District Court is **AFFIRMED**. Our order of April 14, 2010 granting Sinoying's stay motion is hereby **VACATED**.

14