*Smart Study Co., LTD v. Shenzhenshixindajixieyouxiangongsi*

# United States Court of Appeals
# For the Second Circuit

---

August Term 2024

Submitted: February 5, 2025
Decided: December 18, 2025

No. 24-313

---

SMART STUDY CO., LTD,

*Plaintiff-Appellant*,

ABC,

*Plaintiff*,

*v.*

SHENZHENSHIXINDAJIXIEYOUXIANGONGSI,
CHANGGESSHANGMAOYOUXIANGONGSI,

*Defendants-Appellees*,

DEF, HAPPY PARTY-001, TUOYI TOYS, SALIMHIB-US,
GEGEONLY, NA-AMZ001, LICHE CUPCAKE STAND,
BEIJINGKANGXINTANGSSHANGMAOYOUXIANGONGSI,
QINGSHU, CKYPEE, WCH-US, THEGUARD, SUJIUMAISUSU,
MARY GOOD SHOP, HEARTLAND GO, BLUE VIVI, TOPIVOT,
IVYUN, SMSCHHX, NAGIWART, XUANNINGSHANGWU,
QT-US, LADYBEETLE, SUNNYLIFYAU, XUEHUA INC,
TONGMUMY, WONDERFUL MEMORIES,
KANGXINSHENG1, ACUTEYE-US, NUOTING, TELIKE,
HAOCHENG-TRADE, YAMMO202, UNE PETITE MOUETTE,

JOYSAIL, XUIYUI7I, ZINGON US, HAITING$, YONGCHUNCHENGQINGMAOYIYOUXIANGONGSI, HUIBI-US, FAMING, BONUSWEN, APZNOE-US, DAZZPARTY, SMASSY US, DAFA INTERNATIONAL, YICHENY US, YLILILY, WOW GIFT, GAIFEI TRADE CO LTD., JYOKER-US1, SAM CLAYTONDDG, CITIHOMY, WEN MIKE, YOOFLY, SENSIAMZ BACKDROP, VETERANS CLUB,

*Defendants*.

---

Appeal from the United States District Court
for the Southern District of New York
No. 21-cv-5860, Gregory H. Woods, *Judge*.

---

Before:     PARKER, SULLIVAN, and BIANCO, *Circuit Judges*.

Plaintiff Smart Study Co., Ltd. ("Smart Study"), a global entertainment company that owns trademarks associated with the hit song "Baby Shark," appeals from a judgment of the district court (Woods, *J.*) dismissing two China-based defendants alleged to have manufactured or sold counterfeit Baby Shark products. The district court found that service on the defendants by email violated the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (the "Hague Service Convention" or "the Convention"), 20 U.S.T. 361, T.I.A.S. No. 6638, and therefore was not permitted under Federal Rule of Civil Procedure 4(f). We agree with the well-reasoned decision of the district court on this issue of first impression and conclude that the Hague Service Convention does not permit email service on the China-based defendants. We therefore **AFFIRM** the judgment of the district court dismissing defendants from the case for lack of proper service.

AFFIRMED.

Ashly E. Sands, Kerry B. Brownlee, Jason M. Drangel, Danielle S. Futterman, Epstein

Drangel LLP, New York, NY, *for Plaintiff-Appellant*.

Justin R. Gaudio, Amy C. Ziegler, Greer, Burns & Crain, LTD, Chicago, IL, *for Amici Curiae, The Toy Association, Inc., Juvenile Products Manufacturers Association, Inc., and Halloween Industry Association, Inc., in support of Plaintiff-Appellant*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Plaintiff Smart Study Co., Ltd. ("Smart Study"), a global entertainment company that owns trademarks associated with the hit song "Baby Shark," appeals from a judgment of the district court (Woods, *J.*) dismissing two China-based defendants it claims manufactured or sold counterfeit Baby Shark products. The district court found that service on the defendants by email violated the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (the "Hague Service Convention" or "the Convention"), 20 U.S.T. 361, T.I.A.S. No. 6638, and therefore was not permitted under Federal Rule of Civil Procedure 4(f). We agree with the well-reasoned decision of the district court on this issue of first impression and conclude that the Hague Service Convention does not permit email service on the China-based defendants. We therefore **AFFIRM** the judgment of the district court.

3

## I. BACKGROUND

### A. The Hague Service Convention.

In November 1965, representatives from the United States and twenty-two other countries met at The Hague to develop an international agreement that would "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). The resulting treaty, commonly referred to as the "Hague Service Convention," was ratified by the United States in 1969 and has governed service on foreign defendants in signatory countries ever since. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). Today, over eighty-five countries have signed onto the Convention. *See* Hague Conference on Private International Law, Status Table, https://perma.cc/BD22-AV8P (last visited Sept. 24, 2025).

The Hague Service Convention's "primary innovation" was to "require[] each state to establish a central authority to receive requests for service of documents from other countries." *Schlunk*, 486 U.S. at 698. That central authority must then "serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Id.* at 699; *see also* Hague Service Convention, Art. 5. As a practical matter, there are often significant delays in effectuating service in this manner,

4

particularly on China-based defendants. *See, e.g.*, *Zobay v. MTN Grp. Ltd.*, No. 21-cv-3505 (VMS), 2024 WL 4664675, at *7 (E.D.N.Y. Sept. 30, 2024) (describing two-year delay and over $53,000 in expenses before Chinese authorities informed plaintiff that they would not effect service against the state-owned defendants); *Schluter Sys., L.P. v. Sanven Corp.*, No. 22-cv-155 (TJM/CFH), 2023 WL 130888, at *2 (S.D.N.Y. Jan. 6, 2023) (describing similar two-year delay). China has designated its Ministry of Justice as its central authority for purposes of receiving service requests under the Convention, *see* Guangjian Tu, *Service of Process (Documents) in International Civil and Commercial Proceedings: A Critical Review of the Chinese Approach*, 13 Chinese J. Int'l L. 577, 588–90 (2014), but service of process through the Ministry of Justice can be "slow, if not impossible," Jesse M. Fried & Ehud Kamar, *China and the Rise of Law-Proof Insiders*, 48 J. Corp. L. 215, 230 (2023). Service may "take months or years," and "[i]n some cases, the Chinese bureaucracy simply refuses to cooperate." *Id.* (characterizing China's Ministry of Justice as "[t]he Great Legal Wall of China").

The Convention provides several alternatives to service through a foreign country's central authority. For example, Article 8 permits service through "diplomatic or consular agents." And Article 10, for its part, allows service by

"judicial officers, officials[,] or other competent persons of the State of origin . . . through the judicial officers, officials[,] or other competent persons of the State of destination" – that is, the place where service is being attempted – so long as that state "does not object." The Supreme Court has interpreted Article 10(a) to permit service by mail if the receiving country "has not objected" and "service by mail is authorized under otherwise-applicable law." *Water Splash, Inc.*, 581 U.S. at 284. Article 11 of the Convention further permits states to enter bilateral agreements to allow for additional methods of service not otherwise specified. And Article 19 clarifies that the Convention does not preempt a receiving state's internal laws if they are more permissive.

Finally, in addition to setting forth methods for serving a defendant in a foreign country, the Convention specifies the circumstances in which a default judgment may be entered against a non-appearing defendant. Article 15 provides that, in the event "no certificate of service or delivery has been received," a default judgment may still be entered if "the document was transmitted by one of the methods provided for in this Convention," "a period of time of not less than six months . . . has elapsed[,]" and "every reasonable effort has been made to obtain [the certificate] through the competent authorities." Article 15 also preserves a

6

judge's authority to "order, in case of urgency, any provisional or protective measures."

## B.    Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 4(f) lays out the process for serving a party based in a foreign country. The Rule provides that the party may be served by any one of the following methods:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Rule 4(f) often overlaps with the Hague Service Convention in cases involving the service of process on foreign parties. If the Convention controls, a party may follow the usual Convention procedures described above to effect service under Rule 4(f)(1). If not, a party may turn to the methods laid out in Rule 4(f)(2) or pursue "other means" under Rule 4(f)(3). Both the Rule 4(f)(2) and 4(f)(3) paths are open when, as set forth in Article 1 of the Convention, "the address of the person to be served with the document is not known" because in those circumstances the Convention does not apply. And if the address of the person to be served remains unknown, the proposed alternative method of service must be "reasonably calculated, under all the circumstances, to apprise [the defendant] of the pendency of the action." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Should a foreign defendant fail to appear, Federal Rule of Civil Procedure 55 sets forth the procedure for the plaintiff to obtain a default judgment. But Federal Rule of Civil Procedure Rule 60(b) preserves a defendant's ability to later appear and move to vacate the judgment. Indeed, if the defendant shows that there was insufficient service of process, a default judgment may be deemed void

8

under Rule 60(b)(4) for lack of personal jurisdiction. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).

### C. Background and Procedural History.

Smart Study is a global entertainment company headquartered in Seoul, South Korea, specializing in children's programming. Its creations include the hit song "Baby Shark," performed by its preschool band, Pinkfong. Baby Shark debuted at number 32 on the Billboard Hot 100 chart in 2019, and the dance-along music video has since amassed many billions of views on YouTube. Looking to capitalize on this success, Smart Study obtained trademarks for Baby Shark content and produced a wide variety of consumer products such as toys, sound books, and t-shirts that it has sold through major retailers and online marketplaces.

On July 6, 2021, Smart Study filed a sealed complaint in the Southern District of New York against fifty-eight China-based companies, alleging that the companies had "manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold" counterfeit Baby Shark products in violation of federal trademark, copyright, and unfair-competition laws, as well as New York's unfair-competition law. App'x at 95. Shortly thereafter, Smart Study filed an *ex parte* application for a temporary restraining order ("TRO"), and moved for an order to show cause as to why a

9

preliminary injunction barring the companies from manufacturing, selling, or otherwise dealing in counterfeit Baby Shark products should not issue. The district court granted both requests.

As relevant here, Smart Study also moved *ex parte* for an order permitting it to serve copies of the summons, complaint, TRO, and order to show cause on all defendants by email pursuant to Federal Rule of Civil Procedure 4(f)(3). The district court granted that motion too, and Smart Study obtained the defendants' email addresses from Amazon to effectuate service on July 22, 2021.[1]

When no defendant responded to the district court's show-cause order, the court entered a preliminary injunction on July 30, 2021 that precluded defendants from manufacturing or selling counterfeit Baby Shark products. Several months later, two defendants, YLILILY and Topivot, appeared and moved to dissolve the injunction. They argued that the district court lacked personal jurisdiction because the Hague Service Convention prohibits serving Chinese defendants by email. Before the district court ruled on the motion, Smart Study voluntarily dismissed both YLILILY and Topivot from the action. Smart Study then requested an entry

---

[1] One defendant, WOW Gift, was served on August 3, 2021.

of default against the remaining defendants and, after that was entered, moved for a default judgment.

To resolve Smart Study's motion for a default judgment, the district court appointed a disinterested legal advisor – Professor Benjamin L. Liebman, Director of the Hong Yen Chang Center for Chinese Legal Studies at Columbia Law School – to opine on whether the Hague Service Convention permitted email service on the remaining Chinese defendants. Smart Study submitted a declaration from its own expert, Richard K. Wagner of Allen & Overy in Hong Kong. In July 2022, the district court concluded that the Convention barred email service on the defendants and denied Smart Study's motion for default judgment on the ground that it lacked personal jurisdiction over these defendants.[2]

Smart Study then filed a renewed motion for a partial default judgment. It asserted that the Convention did not apply to forty-nine of the remaining defendants because Smart Study had been unable to obtain their physical addresses despite exercising reasonable diligence. Smart Study further argued that a default judgment was appropriate because the defendants had failed to

---

[2] Smart Study appealed this decision, but we dismissed the appeal for lack of appellate jurisdiction. *See Smart Study Co., Ltd., v. HAPPY PARTY-001*, No. 22-1810, 2023 WL 3220461, at *4 (2d Cir. May 3, 2023).

respond to the complaint after Smart Study obtained court approval and served them via email.

The district court granted that motion, permanently enjoined the defendants from manufacturing, selling, or otherwise dealing in counterfeit Baby Shark products, and awarded Smart Study $2,450,000 in statutory damages. The court then ordered Smart Study to show cause as to why the action should not be dismissed as to the two remaining defendants – Shenzhenshixindajixieyouxiangongsi and Changgesshangmaoyouxiangongsi (the "Defendants-Appellees") – for failure to serve in accordance with Federal Rule of Civil Procedure 4(f). Smart Study reasserted that the Convention did not prohibit email service and thus such service remained a proper alternative under Rule 4(f)(3). The district court disagreed and, for the reasons set forth in its July 2022 order denying Smart Study's motion for a default judgment, dismissed its claims against the Defendants-Appellees, without prejudice, for failure to serve. This appeal followed.

## II.  DISCUSSION

We review a district court's dismissal based on improper service for abuse of discretion. *See Thompson v. Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002). An abuse

of discretion occurs if the district court's decision "reflects an error of law, rests on a clearly erroneous factual finding, or cannot be located within the range of permissible decisions." *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 116 (2d Cir. 2023) (internal quotation marks omitted).

**A.    Service Was Improper Under Federal Rule of Civil Procedure 4(f)(3) Because the Hague Service Convention Prohibits Email Service on Chinese Defendants.**

As a threshold matter, Smart Study assumes for purposes of this appeal that the Hague Service Convention governs service over Defendants-Appellees. The relevant question is therefore whether the Convention allows for email service on the China-based defendants. We conclude that it does not.

Drafted in 1965, the Convention unsurprisingly makes no mention of email service. Nevertheless, Article 10(a) stipulates that so long as the "State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by *postal channels*, directly to persons abroad." (emphasis added). Some district courts have construed "postal channels" broadly to permit email service. *See, e.g., Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014) ("In particular, in Article 10, the Convention provides for service on a person located abroad through 'postal channels,' an expression which might be interpreted to allow for service via e-mail." (citation omitted)). But doing

13

so here does not help Smart Study, since Article 10(a) applies only if "the State of destination does not object," *see* Art. 10, and China, for its part, *has* objected to service "by the methods provided by Article 10 of the Convention," *see* Declarations of the People's Republic of China, https://perma.cc/UMT5-V35D (last visited Sept. 24, 2025).

Other district courts, including some within this Circuit, have held that the term "postal channels" does not cover email service, *see, e.g.*, *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015), suggesting that Article 10(a) does not preclude email service on parties in China absent some *other* prohibition. But this interpretation clearly misconstrues the Convention, which "specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies." *Water Splash*, 581 U.S. at 273 (internal quotation marks omitted). Indeed, it would make little sense for a nation to object to a method of service not identified or authorized by the Convention, since, as the district court explained, "there would be nothing affirmative to object to." *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1396 (S.D.N.Y. 2022).

The Convention's text reveals as much. Its first stated objective in the preamble is "to create appropriate means" for the service of documents abroad.

14

*See* Hague Service Convention, *supra*. By coupling "create" with "appropriate," the opening clause indicates that methods not "create[d]," or specified, by the Convention are not "appropriate" for the service of documents. The preamble also invokes the Convention's "purpose" of "improv[ing] . . . organisation," "simplifying" the service of process, and "expediting" service abroad. *See id.* The Articles that follow use the authoritative "shall" in setting out the process of serving a party. *See, e.g.*, Hague Service Convention, Art. 2 ("Each Contracting State shall designate a Central Authority"); *id.* Art. 5 ("The Central Authority . . . shall itself serve the document"); *id.* Art. 6 ("The Central Authority . . . shall complete a certificate"); *cf. United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999) ("'[S]hall' describes a course of action that is mandatory."). In other words, the Convention's text "create[s]" a closed universe of "simple and certain means" of serving parties in foreign countries. *Schlunk*, 486 U.S. at 705–06; *see also* Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 1000 (2017) (underscoring that "unless the Convention does not apply by its own terms, any method of service not approved by the Convention is effectively prohibited under Rule 4(f)(3)").

The Supreme Court's decision in *Water Splash* supports this conclusion. There, the Court considered whether Article 10(a) of the Convention barred

15

service by mail to persons abroad. *See Water Splash*, 581 U.S. at 273. Though the Convention did not "affirmatively authorize[] service by mail[,]" the Court emphasized that Article 10(a) "encompasse[d]" such service because it was not inconsistent with those modes of service already outlined in the Convention. *Id.* at 284 (emphasis deleted). Even so, the Court was careful to reaffirm that the Convention "pre-empts inconsistent methods of service wherever it applies." *Id.* at 273 (internal quotation marks omitted).

Email service is one such "inconsistent method[]" preempted by the Convention. Indeed, were the Convention to permit email service, it is difficult to see why any party "would ever choose slower, more costly methods" of service laid out in the Convention's text. *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020); *see also Luxottica Grp. S.p.A. v. P'Ships & Unincorporated Assocs. Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827 (N.D. Ill. 2019). And reading into the Convention's silence implicit permission for all types of service not affirmatively barred would render meaningless its "approved methods of service," encouraging end-runs around the very system it created. *Water Splash*, 581 U.S. at 273. After all, the Convention is designed to streamline the process for serving documents abroad by "provid[ing] simple and certain

16

means by which to serve process on a foreign national." *Schlunk*, 486 U.S. at 706; *see also* 14 A.L.R. Fed. 3d Art. 8 (2016) ("The Hague Convention . . . establishes a *specific mechanism* for international service of process between parties to the Convention and allows for the use of other *specified methods* in certain circumstances." (emphases added)).

The structure of the Convention – and Articles 11 and 19 in particular – reinforces our interpretation. *Cf. Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) ("Just as Congress' choice of words is presumed to be deliberate, so too are its structural choices."). Article 11 provides that the Convention "shall not prevent two or more Contracting States from agreeing to permit . . . channels of transmission *other than those provided for* in the preceding Articles." (emphasis added.) Two contracting states could therefore agree to allow service by email if they so choose. But this provision would be superfluous if the Convention allowed serving parties to use unspecified methods of service beyond those already identified in the text. *See State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003) ("It is well-settled that courts should avoid [treaty] interpretations that render provisions superfluous."). Article 19 likewise provides that the Convention "shall not affect" a state's "internal law" that "permits

17

methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory." As with Article 11, preserving a country's ability to enact more permissive service-of-process laws would be unnecessary if the Convention did not already bar parties from using methods beyond those specified.

Smart Study attempts to avoid these problems by smuggling an all-encompassing emergency exception into Rule 4(f)(3), which would allow the Rule to function, in "exigent circumstances," as an "alternative to compliance with the Hague [Service Convention]." Smart Study Br. at 24. But Rule 4(f)(3) states only that a party may serve a defendant "by . . . means not prohibited by international agreement"; it makes no mention of urgency or exigent circumstances. In any event, Smart Study has not demonstrated any exigent circumstances justifying a method of service otherwise barred by the Convention. Since filing this lawsuit, local counsel in Beijing has "conclude[d] that the physical addresses listed on [Defendant-Appellees'] Merchant Storefronts may be accurate." Dist. Ct. Doc. No. 118 at 15. Even if "it is highly likely that service via the Hague [Service Convention] [w]ould be unsuccessful," *id.*, "compliance with the Convention is mandatory in all cases to which it applies," *Schlunk*, 486 U.S. at 705.

In sum, we conclude that email service on the Chinese defendants is prohibited by the Hague Service Convention, and thus improper under Rule 4(f)(3).

**B.    Email Service Was Not Proper Under Federal Rule of Civil Procedure 4(f)(2).**

Smart Study contends in the alternative that service was proper under Federal Rule of Civil Procedure 4(f)(2)(A), which allows for methods of service "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction."  The problem for Smart Study is that the Rule applies only "if there is no internationally agreed means, or if an international agreement allows but does not specify other means."  Fed. R. Civ. P. 4(f)(2); *see also* 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1133 (4th ed. Apr. 2020 update) (explaining that Rule 4(f)(2) "provides options to the party serving process when internationally agreed process methods are not intended to be exclusive or when no international agreement is applicable, as would be true, for example, when service is to be made in a nation that is *not a*

19

*signatory to the Hague Convention*" (emphasis added)).[3]  And as explained above,

the "internationally agreed means" – the Convention – prohibits email service in

China.  Smart Study is thus incorrect to assert that Rule 4(f)(2) provides an escape

hatch permitting email service on Defendants-Appellants.

**C.     Smart Study Is Not Entitled to a Default Judgment Under Article 15 of the Hague Service Convention.**

The district court also correctly denied Smart Study's motion for a default

judgment for lack of personal jurisdiction.  *See Sinoying Logistics Pte Ltd. v. Yi Da*

*Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[W]hen a court is considering

whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of

personal jurisdiction." (internal quotation marks omitted)).  Smart Study contends

that Article 15 of the Convention contains an all-encompassing "urgency

exception" that permitted the district court to enter a default judgment as a

"provisional or protective measure[]."   Smart Study Br. at 30–31 (internal

quotation marks omitted).  But it does not explain how the entry of a default

---

[3] Though Smart Study argued below that service was proper under either Rule 4(f)(3) or Rule 4(2)(A), *see* Mem. of Law re: Order to Show Cause, Dist. Ct. Doc. No. 137 at 7, the district court applied Rule 4(f)(3) and Rule 4(f)(2)(C), the latter of which authorizes service in a manner "reasonably calculated to give notice . . . unless prohibited by the foreign country's law."  This is a distinction without a difference, since both Rule 4(f)(2)(A) and (f)(2)(C) apply only "if there is no internationally agreed means, or if an international agreement allows but does not specify other means."  *See* Fed. R. Civ. P. 4(f)(2).

judgment qualifies as a "provisional or protective measure[]," or why this case justifies the entry of default judgment where the district court otherwise lacks personal jurisdiction over Defendants-Appellees. Absent *any* – much less *compelling* – authority on this point, we cannot conclude that the district court abused its discretion in declining to enter a default judgment in Smart Study's favor.

We are, of course, mindful of the difficulties companies face in policing trademark- and copyright-infringement abroad, particularly in China. Lei Zhu, *Made in China, Sued in the U.S.: The Exploitation of Civil Procedure in Cross-Border E-Commerce Trademark Infringement Cases*, 34 Duke J. of Comp. & Int'l L. 139, 144 (2023) (describing China's "inability to effectively regulate" the nearly "80% of the world's counterfeits" that originate from the country). But the Hague Service Convention was not designed to ensure that the service of process in China is as efficient and fast as domestic service in the United States under the Federal Rules of Civil Procedure. Given that Smart Study has not even attempted to comply with the Convention's requirements, we cannot say that the district court abused its discretion in denying relief here.

### III.    CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.